Good morning, Your Honors. May it please the Court, I represent Mr. Ariel Suarez, his U.S. citizen. If he is not, when did he lose his U.S. citizenship? According to the U.S. government, Mr. Suarez lost his U.S. citizenship when the district court judge granted the motion for summary judgment. Now, the motion for summary judgment that was filed by the For the foregoing reasons, the Court should grant the United States motion for summary judgment and enter an order revoking and setting aside the Attorney General's order admitting Mr. Suarez to United States citizenship, canceling the certificate of naturalization, and ordering him to surrender and deliver his certificate and other indicia of United States citizenship to the Attorney General. This conforms with, as we mentioned, 8 U.S.C. section 1451F, which states that whenever an order admitting an alien to citizenship shall be revoked and set aside or certificate of naturalization shall be canceled or both, as provided in this section, the court in which such judgment or decree is rendered shall make an order canceling such certificate and shall send a certified copy of such order to the Attorney General. The order of the court, as the court may have read, the order of the judge stated, in summary, the court grants the government's motion for summary judgment. The clerk is directed to enter judgment in favor of government and against Ariel Suarez. Nowhere in this order does it conform with the legal requirements with what was asked for in the motion that it then enter an order revoking the citizenship, directing the Attorney General to cancel the naturalization certificate. Roberts. So you're saying because a piece of paper characterizing this order was not filed in court, that therefore there was no revocation? Yes, Your Honor, because if we look at all the cases that we cited, every case we cited required that the court order a specific issue, a specific order, that the naturalization certificate be revoked, be canceled. That is a requirement that the law says shall. Now, in response to our contention, which was in about five or six pages of our brief, the government has a one-page response on page 33. The response does not contest our contention. It does not comply with the requirement of having an order specifically revoking the U.S. citizenship. They present a theory of virtual denaturalization, that by virtue of simply granting a motion for summary judgment because it is implicit in the motion, therefore, that is a de facto naturalization order without having to grant that. The only case that the government's ---- But the judge has rendered the court has rendered a judgment, you know, and that's part of the records of the court, and the denaturalizing petitioner. The court granted a motion for summary judgment. The court ---- That's a judgment. That's a judgment, right? Right. But the law requires that ---- and that's why the motion specifically ---- if all that was required was simply to grant the motion for summary judgment, then all that should be asked is the court should grant the United States motion for summary judgment, period. But the government rightfully, in recognition of what the law required, said, and enter an order revoking and setting aside the attorney general's order. Do you agree that if he's not a citizen, that if the court had followed the procedures that you've outlined here, that there would be nothing to the case at that point, that the deportation orders would be or removal orders would be valid? Well, I think there are other issues that I would address, the issue of collateral estoppel and other points. But I do believe that we cannot just dispense with it by just saying that we're in effect rendering a virtual denaturalization simply by the granting of the motion for summary judgment. I think what is instructive is the government cites only one case in support of its contention, a 1912 U.S. Supreme Court case of Johansson. But the facts in Johansson said in its very first paragraph about the facts of that case, the court proceeded to make a decree setting aside and canceling the certificate. So in the Johansson case which they cite, that case specifically, the judge there canceled the certificate, something that was missing here. And they use it for a contention that the retroactive effect of a denaturalization order throughout their argument, they describe it. Is there any evidence in this record, any part that you can point to in this record that would suggest that what the district court did in entering its summary judgment was not grant every one of the requests the government had suggested? Your Honor, I'm not asking you to suggest whether words or not. Whether necessary or not. You made your argument on words. I'm saying is there any evidence in this record that the district court did not grant all the relief the government requested? Yes, Your Honor. And that goes to the issue of collateral estoppel. In the court's order, the court said that the government seeks denaturalization of Suarez on three separate theories. One, Suarez was unlawfully admitted into the U.S. Two, Suarez's naturalization was illegally procured by false testimony. And three, Suarez's naturalization was procured by willful misrepresentation or concealment of material facts. Then it says, as it is dispositive, the court need only consider the government's third argument. The court did not dispose, did not consider the first two arguments of the court. And in the latter portion, in the next page, the court says, the court points that there was, there is no need in a showing of willfulness to have to show, oh, here. In addition, willfulness does not require the specific intent to deceive. These are issues regarding the first and second. In other words, you can enter the U.S. as a legal immigrant, but lose your denaturalization if you say something like you didn't disclose a crime. So you could lose, you could be denaturalized based on a willfulness of your testimony without having to deal with the issue of how you entered and any other thing. So in that issue, when this issue was raised before the immigration judge, the court said, well, there's collateral estoppel because that issue was already fully litigated in the district court's case. But it was not fully litigated, which the government said that it was, because the court did not address the first two theories of this issue. And that was what was being attempted to be presented at the immigration court, which they were not able to do. Kagan. What was the theory it did address? The third theory, which was that Suarez's naturalization was procured by willful misrepresentation or concealment of a material fact. Which was? Well, that at the time he was married, he had been married and had children. And had children. Yes. And came over and three times said, I will not. Right, and he had a, the facts in his motion. I understand what we're trying, but the issue of, we can't, there mustn't be a rush to judgment because we think, well, ultimately this is the case. I mean, people have to, when the, when the, when the case, when the law says the court shall issue an order. And the court did not issue an order revoking. And when the Ninth Circuit affirmed the court's decision, all it affirmed was the, was the motion granting the summary judgment. The issue of the denaturalization was never before the Ninth Circuit, before this court, when it affirmed the the first the first issue. The other point, before I lose my time. Well, just a minute. Things that were in front of the Ninth Circuit are those that are, are the issues that are appealed. The issue that was appealed was the Rule 60B motion, as the court rightfully, as the government rightfully points out. The government points out that there was no stay. Which means that, according to even the government's contention, at any time the government could have gone and amended the order, requested and amended for the order, so that it would conform with the requirements of the law. That there be a specific order, you know, revoking the citizenship. So it cannot argue that, well, the stay prevented us from doing it, because the government's argument was that, that they, there was no stay. They were perfectly able to do that. Before I lose all my time, the, the last point I want to raise is when he raised the issue of his US citizenship before the immigration court in a motion to terminate. The immigration judge denied it on the grounds that the DHS, the Department of Homeland Security, has prosecutorial discretion. I submit, Your Honor, if a person is contending that he is a US citizen, the Department of Homeland Security has no jurisdiction over him, and it is not a matter of prosecutorial discretion to determine if a person is a US citizen or an alien, that is before the court, not prosecutorial discretion of the DHS. Thank you, Your Honor. Thank you. He has time. Yeah, you do have more time. I mean, you had. May I reserve it for revoking? You may. Okay. May it please the Court, I'm Lindsay Williams, and I represent the respondent in this matter. Today, we respectfully request that the Court affirm the decision of the Board of Immigration Appeals. Just to frame this case correctly, this is, the Petitioners are a, a husband and wife that were married in the Philippines. The husband came to the United States, was able to obtain a visa, lawful permanent resident status, and ultimately citizenship by, by the fact that he never informed the United States government that he was married. It's important to note that all of those are connected. All right, so before the court today, we're dealing with two motions to terminate. We're dealing with the application of collateral estoppel. We're dealing with the grounds of removal for both of the petitioners. And finally, the denial of their CAT claim. So first of all, the denial of Ariel's motion to terminate proceedings didn't violate his constitutional rights, because first, the finality of the district court order, which found him to be a non-citizen, was not told by his Federal Rule Civil Procedure 6DB motion. You say it wasn't told? I'm sorry, I missed that. Did he make that argument in the 6DB motion, that there was no formal order of revoking the citizenship? I'm not sure. I would have to, I would have to check the record, Your Honor. I'm not sure if he, he set forth that. I know he mentions it in his brief on appeal here, but I, I don't know how, to what extent it was litigated. That particular point was litigated below. I, I believe that the purpose of the 6DB motion was, was he had new, material evidence, he alleged, which was the nullification of his marriage. I believe that was the entire purpose of it. That was the purpose. Right. So I, I don't believe that that is. Was this other little point that he's made about the fact that the separate piece of paper containing the order wasn't filed, raised at all in the immigration proceedings? I, I don't believe, I don't believe it. Well, I mean, I would have to check. Below. I'm going to assume that it was because we didn't argue that he didn't exhaust it, so I'm, we didn't argue exhaustion in the brief, so I'm going to assume that he did raise it below. But our response to that is, is simply what we put in the brief. If you look at the, the government's motion for summary judgment, the request that, that they made included that his certificate of naturalization be canceled. And the district court, when it issued its judgment, granted summary judgment in favor of the government, which inherently grants the request the government made. So our position is simply because he didn't receive a piece of paper doesn't mean he hasn't been denaturalized. Okay. So turning first to his motion to terminate proceedings and end to the 60B motion, this, him filing a 60B motion didn't change the finality of, of the district court's order granting the, the government's motion for summary judgment. Maryland's motion to terminate didn't violate her right to due process because she was out of status at the time that it was served. She came in on a, on a visitor visa and she overstayed her visa. Turning to the application of the doctrine of collateral estoppel. Let me ask you a question which goes back to the other issue, which I have not thought, given sufficient thought about until just now. Did you ever file any judgment in the previous prior action that the government, that they had against the, the appellant? I mean, you got a summary judgment, but many times a district court will issue a judgment and then a judgment is filed. In fact, we have rules that suggest that there ought to be a judgment over and above just a summary judgment document. Has there ever a judgment filed? I don't know the answer to that question, Your Honor, but I certainly can get it and inform the court. Because that's, that's of some significance. If no judgment is filed, then there isn't anything. Because a summary judgment is just the court's opinion. Then the judgment in, in effect, carries out what the district court does. It was a 60B motion. No. The original motion. The original. I think he's referring to the original motion. The original motion was a motion for summary judgment. I understand that. Right. And then the 60B motion was filed. That was appealed to the Ninth Circuit, this Court. But you could have a 60B motion without ever having a judgment? I would assume not. I mean, there is a final judgment. Our position is there is a final judgment. And the 60B motion was filed afterwards. So, I mean, our position is that there is a judgment and the case has been closed. A mandate has been issued. If that's what your question was. I hope I answered that. So, briefly, just to discuss the application of the collateral estoppel. Basically, under a matter of Fedorenko, in the context of immigration proceedings, issues that have been litigated in denaturalization proceedings have been applied in later removal proceedings where those issues were pertinent to the ultimate decision of whether or not a petitioner is removable. So, in this particular case, if we look to the denaturalization proceedings into the district court order, the district court found that Ariel swore that he was unmarried in his visa application. He separately acknowledged that he understood he would lose his right to his immigrant visa if he married prior to admission. He received an immigrant visa as an unmarried son of a lawful permanent resident, was admitted solely on that account, and was not eligible on any other basis. These are the same facts that he sought to prove in his removal hearing. And as such, since the district court had already looked at them, determined them, and they were fully and fairly litigated, the immigration judge and the board were correct to apply collateral estoppel. Turning to the next issue, substantial evidence supports the immigration judge's finding that Marilyn was removable for remaining in the United States longer than permitted because the administrative record clearly shows that she overstayed her visa. Again, as I stated before, she came in on an immigrant visa. She overstayed it and didn't apply for adjustment of status until 1997, and application of adjustment of status doesn't confer any automatic benefits on a petitioner. Turning to the next issue, substantial evidence supports the immigration judge's conclusion that Marilyn was ineligible for adjustment of status because Ariel was neither a lawful citizen or a lawful permanent resident at the time that he filed the visa petition on Marilyn's behalf. Under INA Section 340D, any person who claims U.S. citizenship through naturalization of a spouse shall be deemed to have lost any right or privilege of citizenship when that spouse is denaturalized. And then also because the district court found that Ariel's entry was fraudulent, he didn't possess a valid resident status either. So there was no valid basis for Marilyn's adjustment of status application. And finally, substantial evidence supports the immigration judge's conclusion that the petitioners failed to establish eligibility for withholding of removal or CAT protection because they could not demonstrate past persecution, a clear likelihood of future persecution, or a clear likelihood of torture upon removal to the Philippines. If there are no further questions, then we respectfully request that the Court affirm the decision of the Board. Thank you. Your Honor, in response to your question earlier about whether that was raised on appeal on page 18, we did say that after the Ninth Circuit Court of Appeals had reaffirmed the district judge's December, January 9, 2003, decision denying petitioner Ariel's motions for relief from the August 7, 2002, summary judgment on March 31, 2004, he still remained a United States citizen. Because there was never an official order revoking his U.S. citizenship and canceling his naturalization. Well, the reason that I ask the question is a two-pronged approach. Number one, maybe there wasn't a judgment. But if you have a 60B motion, it seems to me you've somewhat waived that necessity. Because we're here, you're now testing a final judgment under 60B. If you're going to move under 60B, you've kind of waived the fact there wasn't a judgment. You've kind of suggested to yourself now that you're trying to get rid of the judgment that has already entered. That's what 60B is about, if you read 60B. Yes, I understand. There was a belief at the time that the order was a final judgment. But it was not, as the Court observed. My worry is that if you're going to come before the poor old district judge, again, I'm protecting the old judge. If, in fact, you're going to come in front of the old judge and say, now I want to get rid of the judgment, haven't you waived your argument that you're now trying to make to me there wasn't a judgment? Why make the 60B? Why have an argument about it? Well, there was a time consideration. You know, whether you – because you have to file within 10 days of the judgment. It was filed and the government was saying that it wasn't filed within 10 days of the judgment. But the issue is, was there a judgment? All there was – Was that raised? No. Waived. Which one, Your Honor? In the 60B. Did you raise up there isn't a judgment? No, you did not. Your Honor, the – so we're saying that if that's the case by implicit that the government, the judge, does not have to issue a – I'm just saying, give me a reason why a case or something that suggests that if you bring a 60B motion suggesting that there is a final judgment and not raising that there isn't, but suggesting that there is, and now bring it up and go forth on that, that you now should have the opportunity to suggest there wasn't a final judgment for which you made your 60B motion. Well, there was a belief at the time, but upon looking at all of the cases, we cannot find one case similar to this where there was not a judgment that actually stated what the requirements of the law were, that there must be a specific order denying or revoking the naturalization certificate. All the judge granted here was a motion for summary judgment. That's all. There was no order requiring any of the things required by law. If I may, I also wanted to raise an issue regarding Marilyn Suarez, because unfortunately my arguments had been with regards to Ariel, but at the time the petition was filed for Marilyn in 1997, the visa was not available. By the time she was placed in removal proceeding, the visa was available. According to the government, when Mr. Suarez lost his citizenship, he became an immigrant. That's the government's contention. And as an immigrant petitioning a spouse, by the time the visa, by the time she was placed in removal proceeding, it was current. Furthermore, the Life Act... What was current? The petition by an immigrant for a spouse. In other words, the petition that was filed in 1997 was a U.S. citizen for a spouse. The government, when they placed her in removal proceedings, said that because they had denaturalized him and made him an immigrant, therefore the visa was no longer available. But the second preference, a visa petition that was filed in 1997 happened to be current in February of 2003 when the visa, when she was placed in removal proceedings. And the terms of the Life Act... You're saying that at the time she originally applied, she was a citizen and it wasn't available, but now that she's, then when she went into the proceedings and it became available, but she's still entitled to say that back then he hadn't been denaturalized? No, what I'm saying is that when his petition was filed in 1997 for an immigrant, for an immigrant, for some reason the government did not initially approve it and held it in abeyance. They approved it in 2003, the I-130 visa petition. By that time, they said he was no longer a U.S. citizen, therefore the visa was no longer available for her, therefore they denied the I-485 application of Marilyn. But in fact, by February, March of 2003, the petition that was filed in 1997 was current. And under the terms of the Life Act... What was her status at that time? She was, at that time, she was, I believe she was out of status. But because the petition was, when you file a visa petition for a spouse, if a U.S. citizen files a petition for the spouse, the spouse gets to be in legal status while that petition is pending, even if that person had been out of status. So the government's theory was that when they filed the deportation or removal proceedings against Ms. Suarez, that she was no longer current because he was no longer a U.S. citizen. They forget that as an immigrant, which is what they said he was, his, that petition was current by the time that she was placed, therefore she should not have been placed in removal proceedings. Well, but just a minute, she was not eligible because she wasn't a spouse of a U.S. citizen. She, as I understand it, she's unable to adjust her status as a spouse of an alien lawfully admitted for permanent residence. She can adjust her status as a spouse of an alien lawfully admitted as an immigrant. That's a second preference A. That is a second preference, but he isn't an alien lawfully admitted for permanent residence. At the time the visa petition, that determination was made after the court hearing. But the government's own paper said that after he lost his, he's lost his naturalization, according to the government's own papers, he became an immigrant. So at the time the petition was filed, at the time that she was placed in removal proceedings, I'm saying this is what the government's contention was. He lost his green card after, at the end, this is the government's theory, that he became an immigrant after he lost his naturalization. So what you're saying is that the fact that he committed fraud in both in terms of becoming a lawful permanent resident and a citizen means that he didn't cease to become a citizen or to be lawfully a citizen until they had revoked his citizenship. The fact that he was never lawfully a permanent resident because he lied at the very beginning is not to be taken into account. Your Honor, there are two alternative theories. One is our contention that he remained a U.S. citizen because there was no formal denaturalization order. But the second is if we accept the government's contention, and they do have papers that say that when he lost his naturalization, he reverted to his immigrant status. At the time they placed Marilyn Suarez in removal proceedings, he was an immigrant as far as the U.S. government was concerned. But they were saying that the petition, she was not current because the petition that was filed by a U.S. citizen was no longer current. But we're saying that a second preference A petitioned by an immigrant because it was, it went down, downgraded from U.S. citizen immediate relative to a second preference A, and it was current. I see. Okay. But lawfully admitted for a permanent residence, as far as I'm concerned, he wasn't lawfully admitted for permanent residence because he was married at the time he adjusted his status and therefore ineligible to get the status that he was accorded. That's Monet versus INS. That's a Ninth Circuit case. I understand what's being said is what happened after. I'm saying at the time it was filed. We do understand what you're arguing. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. And we will hear the last case, which is Chicanos-Porla-Casa versus Arizona.
judges: Schroeder, Smith, Walker